# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| TRACE PARKER DOBBINS, *et al.*, | * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No. RDB-17-0540 |
| BANK OF AMERICA, N.A., | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

In this purported class action, Plaintiffs allege in one count that the Defendant, Bank of America, N.A. ("BANA") violated the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2607(a) and (b), by entering into a kickback scheme whereby the Defendant received unearned fees from Genuine Title, LLC for referrals. (Am. Compl., ECF No. 9.)

Now pending is the Defendant's Motion to Dismiss (ECF No. 17). This Court reviewed the parties' submissions and conducted a motions hearing on January 16, 2018.[1] For the reasons stated below, the Defendant's Motion to Dismiss (ECF No. 17) is GRANTED.

## BACKGROUND

### I. *Fangman v. Genuine Title* (RDB-14-0081)

The alleged kickback scheme in this case involves Genuine Title, LLC ("Genuine Title"), which has an extensive history with this Court. In December 2013, Edward and

---

[1] At the request of counsel, this Court conducted a *consolidated* motions hearing for five cases related to Genuine Title's alleged kickback scheme with various financial institutions. (*See* Background, Section IV, *infra*.)

Vickie Fangman (represented by the same counsel involved in this case) filed a complaint against Genuine Title involving essentially identical allegations in the Circuit Court of Baltimore County that was removed to this Court in January 2014. (*See Fangman v. Genuine Title, LLC*, Case No. RDB-14-0081 (D. Md.), at ECF No. 1 ("*Fangman*").) The Fangmans alleged that Genuine Title, in exchange for the referral of title services on their mortgage loan, paid kickbacks to loan brokers and provided "marketing materials for free or at a drastically-reduced rate (collectively 'Free Marketing Materials') for various loan officers who were part of the mortgage lending process." (*Fangman,* Compl. ¶¶ 19-23, ECF No. 2.)[2]

In 2014, Genuine Title went bankrupt, and Plaintiffs' counsel, Smith, Gildea, & Schmidt, began to obtain access from Genuine Title's Receiver to the company's documents and records, including its computer servers. (*Fangman*, ECF No. 150-2 at 7.) By June 2015, Plaintiffs' counsel was "able to pull data . . . that appears to represent . . . buyers' names, addresses, telephone numbers, property addresses, settlement dates, lender and in some cases mortgage broker information." (*Id.*)

On January 2, 2015, plaintiffs in *Fangman* filed a First Amended Complaint naming other financial institutions, including Bank of America, N.A. ("BANA"), as defendants. (*See Fangman*, ECF No. 47.) That complaint alleged violations of RESPA, Maryland's state-law analog to RESPA, and the Maryland Consumer Protection Act. (*See id.*) The *Fangman* plaintiffs further alleged that Genuine Title and its affiliated marketing companies provided Free Marketing Materials and/or "Referring Cash" payments without disclosure on HUD-1 settlement documents. (*Id.* ¶ 3.)

---

[2] Even prior to the *Fangman* suit, in December 2012, a putative class action alleging a similar kickback scheme was filed against Genuine Title and a number of financial institutions. *Roach v. Wells Fargo Bank, N.A.*, Case No. WDQ-l2-03800 (D. Md.). The Plaintiffs in that case voluntarily dismissed their claims in April 2013. (*See* ECF Nos. 36, 37, 39.)

Plaintiffs in *Fangman* filed a Second Amended Complaint on May 20, 2015, adding additional parties and clarifying some of their previous allegations. (*See Fangman*, ECF No. 138.) The Defendant BANA filed a Motion to Dismiss the Second Amended Complaint arguing that (1) the statute of limitations applicable to RESPA had expired, and (2) the mortgage loan officer identified in the complaint was employed by a different lender at the time of the alleged payments. (*Fangman*, ECF No. 172.) All the *Fangman* plaintiffs voluntarily dismissed BANA on October 1, 2015, before this Court ruled on BANA's Motion to Dismiss. (*Fangman,* ECF Nos. 189, 191.)

In addressing the motions to dismiss by other defendants in the *Fangman* case, this Court ruled that equitable tolling may be available under RESPA and that Plaintiffs' claims were not time-barred. *Fangman*, 2015 WL 8315704, at *7. In so holding, this Court applied the equitable tolling test from *Grant v. Shapiro*, 871 F.Supp.2d 462 (D. Md. 1998), that provides, "a plaintiff must allege with specificity fraudulent concealment on the part of the defendants and the inability of the plaintiff, despite due diligence, to discover the fraud." *Fangman*, 2015 WL 8315704, at *7 (quoting *Grant*, 871 F.Supp.2d at 470, n.10). This Court applied that test in the *Fangman* action in the context of Plaintiffs' counsel's significant investigatory efforts, which by June 2015 had successfully identified borrowers referred to Genuine Title between 2006 through 2013. (*See* Mem. 15-16 (citing *Fangman*, 2016 WL 6600509, at *2 (D. Md. Nov. 8, 2016).) Accordingly, this Court found in December 2015 that facts had been sufficiently concealed from the *Fangman* plaintiffs, who did not know about their claim until contacted by counsel. *Fangman*, 2015 WL 8315704, at *7.

In terms of due diligence, this Court found:

> Plaintiffs' counsel has undergone a large-scale review of Defendant Genuine Title's computer system. It is only through this review, aided by early discovery and a proprietary software system, that potential plaintiffs have been identified. The Second Amended Complaint, filed by Plaintiffs' counsel, clearly states that "[a]ll Plaintiffs learned of the illegal kickbacks less than one year prior to filing of the [Second Amended] Complaint and could not have known about the Kickback Scheme until contacted by undersigned counsel." Second Am. Compl. at ¶ 94, ECF No. 138. In light of these unique circumstances, Plaintiffs have demonstrated that equitable tolling is warranted in this case and that all Plaintiffs, with the exception of the Eagle National Plaintiffs, brought their claims within one year of the date they could have first known of their cause of action through due diligence.

*Fangman,* 2015 WL 8315704, at *7.

Following discovery concerning Genuine Title's business practices and relationship with other lenders, some defendants (e.g., Wells Fargo, JP Morgan Chase, and PNC) have struck class settlements which have been the subject of public filings and class notices. (*See, e.g., Fangman*, ECF No. 479, Final Approval Order regarding PNC settlement.)

## II. Enforcement Actions by the federal Consumer Financial Protection Bureau ("CFPB") and Maryland Attorney General

Meanwhile, the Consumer Financial Protection Bureau ("CFPB") and the Maryland Attorney General initiated an enforcement action in this Court on January 22, 2015 against Wells Fargo Bank, N.A. and JPMorgan Chase Bank, N.A. predicated on essentially the same scheme involving Genuine Title. (*See CFPB v. Wells Fargo Bank, N.A.*, Case No. RDB-15-0179 (D. Md.) ("*Lender Enforcement Action*").) The pendency and ultimate settlement of the *Lender Enforcement Action* in January 2015 was widely publicized. Specifically, the CFPB issued a press release on January 22, 2015, and local and national news media, including *The Baltimore Sun*, CNN, and the *Wall Street Journal*, published stories about the case. (*See Dobbins*, ECF Nos. 17-3, 17-4.)

The CFPB and Attorney General also filed an enforcement action on April 29, 2015 directly against Genuine Title, its principals, and affiliates arising out of the same alleged scheme. (*See CFPB v. Genuine Title LLC*, Case No. RDB-15-1235 (D. Md.) ("*Genuine Title Enforcement Action*")). The CFPB issued a press release on April 29, 2015 in which the CFPB outlined the enforcement action against Genuine Title based on the same facts alleged by the *Fangman* plaintiffs. On May 1, 2015, the CFPB and Maryland Attorney General announced a settlement with Genuine Title, and this Court entered a Stipulated Final Judgment and Order approving the settlement. (*See Genuine Title Enforcement Action*, ECF No. 18.) As with the *Lender Enforcement Action*, the *Genuine Title Enforcement Action* settlement was also reported by various news media outlets and other publications in May 2015. (*See Dobbins,* ECF No. 17-4.) The settlement orders in these enforcement actions explicitly contemplate related litigation by affected consumers (*see, e.g., Genuine Title Enforcement Action*, Genuine Title Order 5, ECF No. 18), but neither the Consumer Financial Protection Bureau nor the Office of the Attorney General of Maryland required that any financial institutions issue formal notices to the public (*see Lender Enforcement Action*, JPMorgan Chase Order, ECF No. 10; *Lender Enforcement Action*, Wells Fargo Order, ECF No. 11).[3]

## III. *Dobbins v. Bank of America, N.A.* (RDB-17-0540)

Plaintiffs Dobbins and Parker allege that they closed on their mortgage loan from Bank of America, N.A. ("BANA") on December 23, 2010. (*Dobbins*, Am. Compl. ¶¶ 66, 67, ECF No. 9.) On February 23, 2017, Plaintiffs Dobbins and Parker jointly filed a Class Action Complaint against BANA alleging a kickback scheme between Genuine Title and

---

[3] Plaintiffs' counsel's oral argument to the contrary is belied by the plain text of the settlement orders.

BANA in violation of RESPA. (Compl., ECF No. 1.) On July 5, 2017, Plaintiffs filed an Amended Complaint in which Plaintiffs seek to represent the following alleged class:

> All individuals in the United States who were borrowers on a federally related mortgage loan (as defined under the Real Estate Settlement Procedures Act, 12 U.S.C. § 2602) originated or brokered by Bank of America, N.A., for which Genuine Title provided a settlement service, as identified in Section 1100 on the HUD-1, between January 1, 2009, and December 31, 2014. Exempted from this class is any person who, during the period of January 1, 2009, through December 31, 2014, was an employee, officer, member and/or agent of Bank of America, N.A., Genuine Title LLC, Competitive Advantage Media Group LLC, Brandon Glickstein, Inc., and/or Dog Days Marketing, LLC.

(Am. Compl. 17, ECF No. 9.) Ultimately, Defendant BANA filed the currently pending Motion to Dismiss. (ECF No. 17.)

## IV.   Consolidated Hearing on Motions to Dismiss

Plaintiffs' counsel, who has been in possession of Genuine Title's records since 2014 and who processed the data – including buyers' names – by June 2015, has filed the following seven class actions against other lenders who, like the defendants in *Fangman*, allegedly engaged in kickback schemes with Genuine Title.

1. *Edmondson v. Eagle National Bank, et al.,* Civil Case No. RDB-16-3938 (D. Md.)
2. *Dobbins, et al. v. Bank of America, N.A.,* Civil Case No. RDB-17-0540 (D. Md.)
3. *Callum v. Priority Financial Services*, Civil Case No. RDB-17-0623 (D. Md.)
4. *James v. Acre Mortgage & Financial*, Civil Case No. RDB-17-1734 (D. Md.)
5. *Baugh, et al. v. The Federal Savings Bank*, Civil Case No. RDB-17-1735 (D. Md.)
6. *Ryman v. First Mortgage Corporation*, Civil Case No. RDB-17-1757 (D. Md.)
7. *Bezek, et al. v. First Mariner Bank*, Civil Case No. RDB-17-2902 (D. Md.)

On October 31, 2017, Miles & Stockbridge, defense counsel in both *Edmondson* (RDB-16-3938) and *Bezek* (RDB-17-2902), requested a consolidated hearing on ripe motions to dismiss. (*Edmondson*, ECF No. 20.) Plaintiffs' counsel, Smith, Gildea & Schmidt, agreed to a consolidated hearing for the ripe motions to dismiss in five of the seven cases – namely, *Edmondson* (RDB-16-3938); *Dobbins* (RDB-17-540); *James* (RDB-17-1734); *Baugh* (RDB-17-

6

1735); *Bezek* (RDB-17-2902). (*Edmondson*, ECF No. 21.)[4] Generally, the motions to dismiss in these five cases present statute of limitations and equitable tolling issues. This Court conducted the requested consolidated hearing on January 16, 2018.

**STANDARD OF REVIEW**

I. **Rule 8(a)(2) and Rule 12(b)(6) Generally**

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Rule 12(b)(6) authorizes the dismissal of a complaint if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Generally, to withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (internal quotations and citation omitted). "A formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). Similarly, "an unadorned, the-defendant-unlawfully-harmed-me accusation" is insufficient. *Iqbal*, 556 U.S. at 678.

In reviewing a motion to dismiss under Rule 12(b)(6), the Court may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

---

[4] Plaintiffs' counsel requested that *Callum* (RDB-17-0623) and *Ryman* (RDB-17-1757) be addressed separately. (*Edmondson,* ECF No. 21.) *Callum* is currently stayed pending settlement-related discovery. (*See Callum*, ECF No. 10.) *Ryman* "involves complex successor liability and jurisdictional issues not present in most of the other cases." (*Edmondson,* ECF No. 21.)

7

## II. Statute of Limitations & Equitable Tolling

A 12(b)(6) motion is an appropriate vehicle through which the Court may evaluate the affirmative defense of the statute of limitations "if all facts necessary to the affirmative defense clearly appear on the face of the complaint." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007); *see Semenova v. Maryland Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017).

Even if a statute of limitations defense appears to have merit based upon the face of the complaint, a Court may exercise its equitable authority to toll the statute of limitations.[5] *Fangman*, 2015 WL 8315704, at *7 (citing *United States v. Kwai Fun Wong*, 135 S.Ct. 1625, 1630 (2015); *Grant v. Shapiro & Burson, LLP, et al.*, 871 F. Supp. 2d 462, 470 n.10 (D. Md. 2012)). In *Menominee Indian Tribe of Wisconsin v. United States*, 136 S.Ct. 750 (2016), a *unanimous* United States Supreme Court held that equitable tolling requires the plaintiff to establish two elements: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." 136 S.Ct. at 755 (quoting *Holland v. Florida,* 560 U.S. 631, 649 (2010). The Supreme Court emphasized these two requirements as "elements, not merely factors of indeterminate or commensurable weight." 136 S.Ct. at 756 (internal quotation marks omitted) (citing *Pace v. DiGuglielmo,* 544 U.S. 408, 418 (2005)).[6] While Plaintiffs argue that *Menominee's* test does not control this action because it is limited to the habeas context, the Supreme Court in *Menominee* applied the test to a contracts case, and the decision admits of no exceptions to the test's applicability. Furthermore, the Fourth Circuit applied the *Menominee* test to a tax appeal claim in *Cunningham v. Commissioner of Internal Revenue*, No. 17-1433, 2018 WL 460854, at *2 (4th Cir. Jan. 18, 2018) (unpublished). Other

---

[5] As this Court confirmed in *Fangman*, equitable tolling applies to RESPA claims. *Fangman,* No. CV RDB-14-0081, 2015 WL 8315704, at *7 (citing *Kwai Fun Wong*, 135 S.Ct. at 1630; *Grant.*, 871 F. Supp. 2d at 470 n.10 (D. Md. 2012)).
[6] In applying this test to the facts of the *Menominee* case, the Supreme Court found "no extraordinary circumstances" and therefore it had no need to "decide whether the Tribe was diligently pursuing its rights." 136 S.Ct. at 757, n.5.

circuits have applied the *Menominee* test in numerous other contexts as well. *E.g., Knauf Insulation, Inc. v. Southern Brands, Inc.*, 820 F.3d 904, 907-10 (7th Cir. 2016) (Sherman Act claim); *Villarreal v. R.J. Reynolds Tobacco Co., Pinstripe, Inc.*, 839 F.3d 958, 970-73 (11th Cir. 2016) (age discrimination claim).

The Supreme Court has held that "the diligence prong . . . covers those affairs within the litigant's control." 136 S.Ct. at 756. This element requires "reasonable diligence," not "maximum feasible diligence." *Holland*, 560 U.S. at 653. The second element "is met only where the circumstances that caused a litigant's delay are both extraordinary *and* beyond its control." *Menominee,* 136 S.Ct. at 756. In other words, the circumstances must combine to render "critical information . . . undiscoverable." *Gould v. U.S. H.H.S*, 905 F.2d 738, 745–46 (4th Cir. 1990) (en banc). Courts have consistently held that fraudulent concealment by the defendant is a circumstance that may justify equitable tolling. *E.g., Supermarket of Marlinton, Inc. v. Meadow Gold Dairies, Inc.,* 71 F.3d 119, 122 (4th Cir. 1995); *Grant*, 871 F.Supp.2d at 470, n.10.

The United States Court of Appeals for the Fourth Circuit has emphasized that "equitable tolling is appropriate 'in those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result.'" *Cunningham v. Comm'r of Internal Revenue*, No. 17-1433, 2018 WL 460854, at *2 (4th Cir. Jan. 18, 2018) (quoting *Whiteside v. United States*, 775 F.3d 180, 184 (4th Cir. 2014) (en banc) (internal quotation marks omitted). Federal courts employ equitable tolling "sparingly," *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990), as it is "a rare remedy to be applied in unusual circumstances." *Wallace v. Kato*, 549 U.S. 384, 396 (2007).

**DISCUSSION**

Plaintiffs concede that RESPA's one-year statute of limitations would bar this lawsuit, which was filed more than six years after Plaintiffs closed on their loan and a year and a half after Plaintiffs' counsel processed Genuine Title's data. However, the parties dispute whether equitable tolling saves Plaintiffs' claim. Defendant further argues that Plaintiffs fail to allege sufficient facts under 12 U.S.C. §§ 2607(a) and (b) to maintain their RESPA claim.[7]

**I.   Materials Considered**

As an initial matter, the Defendant asks this Court to consider materials that are not integral to the Complaint (e.g., court filings in the *Fangman* suit and the CFPB and Maryland Attorney General enforcement actions). The Plaintiffs assert with little to no analysis that these materials are "not the proper subject of judicial notice." (Mem. Opp'n 2-3, ECF No. 18-1.)

In considering a motion under Rule 12(b)(6), a district court may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *accord Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citation omitted). This Court may take judicial notice of "docket entries, pleadings and papers in other cases," *Brown v. Ocwen Loan Servicing, LLC*, PJM–14–3454, 2015 WL 5008763, *1 n.3 (D. Md. Aug. 20,

---

[7] With regard to § 2607(a), Defendant contends that the Amended Complaint is devoid of any specific allegation that Dobbins' and Parker's loan was referred to Genuine Title as part of an alleged kickback scheme, or that the BANA mortgage loan officer's alleged receipt of Free Marketing Materials or Turn Down Opportunities by Michael Bendebba, BANA's mortgage loan officer, was connected to their loan. (Mem. 20, ECF No. 17-1.) With regard to § 2607(b), Defendant maintains that Plaintiffs do not allege that BANA or any of its representatives "split fees" in connection with their loan, or that BANA ever received any portion of charges that Genuine Title allegedly received with respect to their loan. (*Id.* 21). In response, Plaintiffs argue they have adequately pled their RESPA claim under 12 U.S.C. § 2607(a) as they have alleged all of the essential elements of such a claim with specific allegations about the loan transaction and identification of specific BANA employee responsible for their loan. (Mem. Opp'n 16-18, ECF No. 18-1.) Under 12 U.S.C. § 2607(b), Plaintiffs argue they have specifically alleged that the kickbacks BANA received were paid for by Genuine Title with the proceeds from the amount charges for title services and that this splitting of fees is directly prohibited by § 2607(b). (*Id.* 17.)

2015), *aff'd*, 639 F. App'x. 200 (4th Cir. May 6, 2016), as well as "newspaper articles, analysts' reports, and press releases," *In re Human Genome Sciences Inc. Sec. Litig.*, 933 F. Supp. 2d 751, 758 (D. Md. 2013); *accord Sha v. GenVec Inc.*, No. DKC-12-00341, 2013 WL 5348133, *1 n.2 (D. Md. Sept. 20, 2013). The rule against hearsay does not bar materials offered to establish the date of public notice rather than the truth of the matter asserted. *See In re Human Genome*, 933 F. Supp. 2d at 758.

This Court finds that the court filings and news articles offered by the Defendant will help resolve the question of equitable tolling. The consideration of these materials does not transform this Motion to Dismiss into one for summary judgment. *See Tellabs,* 551 U.S. at 322; *Phillips*, 572 F.3d at 180.

## II. Equitable Tolling

### A. Due Diligence

The parties have devoted considerable briefing and oral argument to disputing the content of the due diligence requirement in the wake of *Menominee*, 136 S.Ct. 750. The Defendant argues that *Menominee* raised the bar to require affirmative acts of diligence even if the Plaintiffs had no inquiry notice of the need to pursue their rights in the first place. In response, the Plaintiffs note language in the Fourth Circuit opinion in *Supermarket of Marlinton* permitting a plaintiff to satisfy that diligence requirement by establishing that they "[were] not (and should not have been) aware of facts that should have excited further inquiry." 71 F.3d at 128. At the consolidated hearing, the Defendant argued that inquiry notice is inapplicable to RESPA, which provides for a limitations period beginning on the date of the occurrence of the violation. *See Mullinax v. Radian Guar., Inc.,* 199 F. Supp. 2d 311, 324 (M.D.N.C. 2002); *Cunningham v. M&T Bank Corp.,* 814 F.3d 156 (3d Cir. 2016).

The parties further disagree on whether the efforts and knowledge of Plaintiffs' counsel may stand in for the Plaintiffs' own diligence to fulfill whatever level of diligence is required after *Menominee*. The Plaintiffs assert that they cannot be charged with the knowledge of their own attorneys before an agency relationship was established. If judged by Plaintiffs' own conduct, the Defendant asserts that the Amended Complaint's "non-specific, conclusory assertions" of having acted reasonably and exercised due diligence do not suffice. (Mem. 14, ECF No. 17-1.) The Defendant asks this Court to follow *Cunningham v. M&T Bank Corporation,* 814 F.3d 156 (3d Cir. 2016), in rejecting the "lawyerly intervention" theory and in finding that Plaintiffs' participation in the loan transaction does not by itself fulfill due diligence.

Even if Plaintiffs can establish that they were "pursuing [their] rights diligently," *Menominee*, 136 S.Ct. at 755, with or without credit for their counsel's actions, this Court cannot ignore the role Plaintiffs' counsel has played in determining the timing of this action – and the other pending cases related to the Genuine Title kickback scheme. In June 2015, Plaintiffs' counsel had access to Genuine Title's "buyers' names, addresses, telephone numbers, property addresses, settlement dates, lender and in some cases mortgage broker information," (*Fangman*, ECF No. 150-2 at 7), information sufficient to uncover the scheme in this case. Even if Plaintiffs' counsel's knowledge is not relevant to the due diligence analysis, counsel's in-depth investigation into Genuine Title's records certainly bears heavily on the question of whether "extraordinary circumstances" stood in the Plaintiffs' way and prevented timely filing. *Menominee*, 136 S.Ct. at 755.

**B. Extraordinary Circumstances**

In an effort to establish the "extraordinary circumstances" element, the Plaintiffs assert that "misrepresentations on Plaintiffs' HUD-1 and other loan documents are sufficient to support their claims for equitable tolling." (Mem. Opp'n 6, ECF No. 18-1 (citing *Mullinax v. Radian Guar., Inc.,* 199 F. Supp. 2d 311, 330 (M.D.N.C. 2002)).) At oral argument, the Plaintiffs claimed that the Defendant's *ongoing* failure to disclose the true nature of its relationship with Genuine Title by sending notices to all customers known to have used Genuine Title's services constitutes an act of *continued* concealment by the Defendant. Under these circumstances, Plaintiffs contend that they have satisfied the extraordinary circumstances element because they "were not, and could not have been, aware of the [BANA]'s participation in the Genuine Title kickback scheme until contacted by counsel on June 27, 2016." (Mem. Opp'n 13.)

Defendant contends that Plaintiffs have not alleged fraudulent concealment by BANA, particularly when it is "well settled" that an alleged RESPA violation is not a self-concealing wrong and mere nondisclosure on HUD-1 settlement documents is insufficient to toll the statute of limitations. (*Id.* 10 (citing cases).)

Even assuming *arguendo* that the Defendant's non-disclosures constitute fraudulent concealment with sufficient particularity,[8] Plaintiffs' counsel filed suit against BANA back in January 2015 and has acknowledged that it had extensive data by June 2015. Accordingly, the Defendant's alleged continuing fraudulent concealment was simply not the only circumstance delaying the filing of this lawsuit. In spite of this fact, Plaintiffs argue that this Court should focus on the Defendant's "ongoing" failure to broadly notify customers of a

---

[8] This assumption is consistent with this Court's holding in *Fangman*, 2015 WL 8315704, at *7.

potential claim related to Genuine Title. Plaintiffs' view of equitable tolling essentially demands that this Court order Defendant BANA, and similarly situated lenders, to send out such notices to stop the ongoing equitable tolling of any RESPA claim by any Genuine Title customer. This theory swallows RESPA's one-year statute of limitations, which was set by Congress, and asks this Court to regulate lenders in a way that was specifically not requested by those federal and state enforcement agencies that have actively investigated Genuine Title and its associated financial institutions. (*See Lender Enforcement Action* (RDB-15-0179), JPMorgan Chase Order, ECF No. 10; *Lender Enforcement Action*, Wells Fargo Order, ECF No. 11.)[9]

Furthermore, the Defendant's alleged concealment effort did not "st[and] in [Plaintiffs'] way" up until the time they were contacted by counsel. *Menominee*, 136 S.Ct. at 755. In other words, it was easily *within the Plaintiffs' control* to discover a basis for their action in May 2015 at the latest,[10] over a year prior to being contacted by counsel on June 27, 2016 and far more than one year prior to the filing of the Complaint on February 23, 2017. *See id.* at 756. Unlike in the *Fangman* case, the Plaintiffs in this case could have discovered a substantial amount of public information on Genuine Title's illegal scheme that was brought to light through the *Fangman* and enforcement litigation. The publicly available information was sufficiently specific and applicable to the Plaintiffs that contact by counsel was not the only method by which they could have learned of their claim. While Plaintiffs contend they

---

[9] Plaintiffs' counsel's oral argument to the contrary is belied by the plain text of the settlement orders.
[10] This time period is when the *Genuine Title Enforcement Action* settlement was reported by various media outlets and publications (*see Dobbins,* ECF No. 17-4), but this Court notes that Plaintiffs' claims may have been discoverable even earlier. In January 2, 2015, plaintiffs in *Fangman* filed a First Amended Complaint naming other financial institutions, including Eagle National Bank. (*See Fangman*, ECF No. 47.) On January 22, 2015, the CFPB and the Maryland Attorney General issued a press release regarding their joint enforcement action against Wells Fargo Bank, N.A. and JPMorgan Chase Bank, N.A. (*Dobbins*, ECF No. 17-3.), and local and national news media, including *The Baltimore Sun*, CNN, and the *Wall Street Journal*, published stories about the case (*see Dobbins*, ECF No. 17-4). In April 2015, the CFPB and Attorney General filed an enforcement action directly against Genuine Title, its principals, and affiliates arising out of the same alleged scheme. (*Genuine Title Enforcement Action*, RDB-15-1235, ECF No. 1).

were unaware of the true nature of the relationship Genuine Title and BANA, they do not disclaim knowledge of having used Genuine Title for title and settlement services or BANA as a lender. (*Dobbins*, Am. Compl. ¶¶ 66-68, ECF No. 9.) Public information indicated that both entities were potentially involved in an illegal kickback scheme. The First Amended Complaint in the *Fangman* action named BANA as a defendant. (*Fangman*, RDB-14-0081, ECF No. 47.) Genuine Title was a defendant in the *Genuine Title Enforcement Action* (*see* RDB-15-1235, ECF No. 1), which produced public court records and publicly available news coverage (*see Dobbins*, ECF No. 17-4).

The Plaintiffs have made no allegation that the Defendant's actions or a lack of access to public records, news, the internet, or a phone placed such information outside their reach.[11] They merely argue that they were not yet on "notice" of the need to search for such information. The issue of notice, however, is not relevant to the extraordinary circumstances analysis, which asks whether the circumstances combine to render "critical information, *reasonable investigation notwithstanding*, undiscoverable." *Gould*, 905 F.2d at 745–46 (emphasis added); *see also Supermarket of Marlinton*, 7l F.3d at 122 (requiring the plaintiff to show that it "failed to discover those facts within the statutory period, despite . . . the exercise of due diligence"). To consider notice or only that quantum of information discoverable by Plaintiffs' reasonable diligence would essentially ignore the Supreme Court's holding in *Menominee,* 136 S.Ct. at 756, that diligence and extraordinary circumstances are two distinct elements. The Fourth Circuit's use of "notwithstanding" in *Gould*, 905 F.2d at 745–46, and "despite" in *Supermarket of Marlinton*, 7l F.3d at 122, underscore that these elements must

---

[11] Plaintiffs note that the news sources offered by the Defendant require a subscription to view online (Mem. Opp'n 13, ECF No. 18-1), but there is no allegation that Plaintiffs were unable to view a print copy, initiate a free trial, or purchase a subscription. Again, these alleged subscription requirements did not place the news coverage outside Plaintiffs' control, and Plaintiffs do not allege any lack of access to the public court filings in the *Fangman* and enforcement actions.

exist *simultaneously*, with the extraordinary circumstances placing the discovery of critical information entirely outside the Plaintiffs' control.

In *Fangman*, this Court found that the Defendant's concealment efforts contributed to "unique" circumstances warranting equitable tolling, *Fangman*, 2015 WL 8315704, at *7, but the Plaintiffs here also seek equitable tolling of a RESPA claim based upon Genuine Title's kickback practices. Plaintiffs' claim for equitable tolling is not "unique" let alone "extraordinary" when the underlying claims and concealment efforts are nearly identical and when the prior Genuine Title litigation and subsequent media coverage rendered critical information discoverable.

Plaintiffs have not demonstrated that their case presents one of "those rare instances where . . . it would be unconscionable to enforce the limitation period against [them] and gross injustice would result." *Cunningham*, 2018 WL 460854, at *2. Plaintiffs' counsel has already secured significant awards for their efforts to hold Genuine Title and other financial institutions accountable for violating RESPA. (*See, e.g., Fangman*, Final Approval Order regarding Wells Fargo settlement, ECF No. 411.) Genuine Title went bankrupt, and Plaintiffs do not allege that the Defendant continues to receive illegal kickback payments through deceiving Plaintiffs or their fellow class members. Plaintiffs allege that between 2009 and 2014 they and other class members were "deprived of impartial and fair competition between settlement service providers in violation of RESPA and paid more for [their] settlement services" because Genuine Title used a portion of each settlement payment to cover the cost of marketing materials provided as kickbacks to BANA's referring broker Michael Bendebba. (Am. Compl. ¶ 52, 53, 82.) While the purported class may have some interest in accountability and financial compensation, Congress firmly expressed an interest

in providing certainty to the real estate market when it set the RESPA statute of limitations at one year.[12] Given this context, it would not be unconscionable or grossly unjust to enforce RESPA's one-year statute of limitations. To hold otherwise would make "[Plaintiffs'] counsel—and not the terms of the legislation passed by Congress—the master of the RESPA statute of limitation." (*Edmondson*, RDB-16-3938, Mem. Op. Mot. Dismiss 18, ECF No. 26.)

The Plaintiffs therefore fail to fulfill the extraordinary circumstances element required to equitably toll their claim. *Menominee,* 136 S.Ct. at 756. Plaintiffs proffer no amendment to the pleadings that could overcome this conclusion, and no amount of discovery would aid this Court's analysis of Plaintiffs' claim for equitable tolling. As Plaintiffs have failed to establish the extraordinary circumstances element, this Court need not determine whether the Plaintiffs were diligently pursuing their rights. *Menominee*, 136 S. Ct. at 757, n.5. While the parties here earnestly contest the content of the due diligence requirement in the wake of *Menominee,* this Court finds no reason to address those contentions. This Court also need not reach the Defendant's substantive arguments that Plaintiffs fail to allege sufficient facts under 12 U.S.C. §§ 2607(a) and (b) to maintain their RESPA claim.

---

[12] Compare, for example, the State of Maryland's three-year statute of limitations for civil actions such as fraud or personal injury claims. Md. Code Ann., Cts. & Jud. Proc. § 5-101.

## **CONCLUSION**

For the reasons stated above, Defendant's Motion (ECF No. 17) is GRANTED.

A separate Order follows.

Dated: January 30, 2018 \_\_\_/s/_____
Richard D. Bennett
United States District Judge