IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **TRACIE PARKER DOBBINS,** *et al.*, | * |
| | * |
|     **Plaintiffs,** | * |
| | * |
| v. | *    Civil Case No. SAG-17-0540 |
| | * |
| **BANK OF AMERICA, N.A,** | * |
| | * |
|     **Defendant.** | * |
| | * |

************

### MEMORANDUM OPINION

This matter concerns a Motion to Certify Class pursuant to Rule 23 of the Federal Rules of Civil Procedure ("the Motion"). ECF 50. In their Amended Complaint, Tracie Parker Dobbins and Gladys Parker (collectively, "Plaintiffs"), seek to represent a class of borrowers that "currently have or had a federally related mortgage loan" serviced by Bank of America, N.A. ("BANA"). ECF 9 ¶ 1. BANA opposed the Motion to Certify, ECF 55, and Plaintiffs filed a Reply, ECF 62. A telephonic hearing was held on August 14, 2020.[1] For the reasons that follow, the Motion, ECF 50, will be GRANTED.

### I.  FACTUAL BACKGROUND

The two named Plaintiffs seek to represent a class of borrowers that (1) have or had a loan originated or brokered by BANA, and (2) received title and settlement services in connection with the closing of the loan from Genuine Title, LLC ("Genuine Title"). ECF 9 ¶ 1. Plaintiffs allege that, in 2010, they obtained a residential mortgage loan from BANA, as joint tenants, to refinance their home. *Id.* ¶ 66. Their broker, Michael Bendebba ("Bendebba") referred Plaintiffs to Genuine

---

[1] Following the telephonic hearing, BANA filed a Supplemental Response, ECF 65, and Plaintiffs filed a Response, ECF 66. These filings have not been considered in ruling on this Motion, because surreplies are not permitted unless otherwise ordered by the Court. *See* Loc. Rule 105(2)(a) (D. Md. 2018).

1

Title for settlement services, pursuant to an undisclosed agreement to refer customers to Genuine Title in exchange for free marketing materials. *Id.* ¶¶ 67-68. Plaintiffs used and paid for services from Genuine Title based on Bendebba's recommendation, and Bendebba received free marketing materials from Genuine Title in exchange. *Id.* Specifically, Plaintiffs assert that their payments to Genuine Title were shared in part with BANA, through Bendebba, in violation of the Real Estate Settlement Procedures Act ("RESPA"). *Id.* ¶ 70. Plaintiffs further allege that, because of this kickback arrangement, they paid higher costs for their settlement services than they otherwise would have paid. *Id.* ¶ 65.

Plaintiffs provide additional details about the alleged kickback scheme in their Amended Complaint. They allege that Brandon Glickstein — who previously worked for Genuine Title — formed Competitive Advantage Media Group ("CAM") to facilitate kickback payments and to offer free marketing materials to lenders, in exchange for referrals. *Id.* ¶¶ 24-29. Plaintiffs also allege that in addition to free marketing kickbacks, Genuine Title offered "Turn Down Kickbacks." Under that scheme, Genuine Title provided information on borrowers who had not qualified for a loan from one lender, to another lender with whom the borrower could qualify. In exchange for that information, the lender who ultimately brokered the loan referred the borrower to Genuine Title for settlement services. *Id.* ¶¶ 35-42.

Prior to this motion, United States District Judge Richard D. Bennett granted BANA's Motion to Dismiss this action. ECF 25; 2018 WL 620456 (D. Md. Jan. 30, 2018). Judge Bennett found that Plaintiffs' RESPA claim was barred by that law's one-year statute of limitations, and further concluded that equitable tolling could not salvage the claim. *Id.* at 16–17; 2018 WL 620456, at *9. However, the United States Court of Appeals for the Fourth Circuit reversed on appeal. *Edmondson v. Eagle National Bank*, 922 F.3d 535, 558 (4th Cir. 2019). Primarily, the

Fourth Circuit found that Plaintiffs had sufficiently alleged that BANA engaged in affirmative acts of concealment, and thus that the one-year statute of limitations might be tolled based on a theory of fraudulent concealment. *Id.* at 551–58. The panel remanded for further proceedings.

Plaintiffs now seeks certification of the following class of individuals who allegedly suffered harm under RESPA, 12 U.S.C. § 2607, as a result of the alleged kickback scheme BANA engaged in with Genuine Title:

> All individuals in the United States who were borrowers on a federally related mortgage loan (as defined under the Real Estate Settlement Procedures Act, 12 U.S.C. § 2602) originated or brokered by Bank of America, N.A. for which Genuine Title provided a settlement service, as identified in Section 1100 on the HUD-1, between January 1, 2009 and December 31, 2014. Exempted from this class is any person who, during the period of January 1, 2009 through December 31, 2014, was an employee, officer, member and/or agent of Bank of America, N.A., Genuine Title LLC and/or Competitive Advantage Media Group, LLC.

ECF 50 at 1.

## II. LEGAL STANDARD

The "class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)). Class actions are subject to Federal Rule of Civil Procedure 23(a), which requires that (1) the alleged class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the representatives' claims are typical of the claims of the class, and (4) the representatives will fairly and adequately protect the interests of the class. The party seeking certification carries the burden of demonstrating that it has complied with Rule 23. *EQT Prod. Co. v. Adair*, 764 F.3d 347, 357 (4th Cir. 2014). The four requirements of Rule 23(a) — numerosity, commonality, typicality,

and adequate representation — limit the class claims to those fairly encompassed by the named plaintiff's claims. *Dukes*, 564 U.S. at 349.

After satisfying the Rule 23(a) prerequisites, the plaintiff must show that the proposed class action satisfies one of the enumerated conditions in Rule 23(b). *E.g.*, *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 423 (4th Cir. 2003). Here, Plaintiffs seek class certification pursuant to Rule 23(b)(3). Under that rule, a class may be certified if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Courts evaluating class certification "must rigorously apply the requirements of Rule 23." *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 345 (4th Cir. 1998). Although the court's analysis must be "rigorous" and "may 'entail some overlap with the merits of the plaintiff's underlying claim,' Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Ct. Retirement Plans and Trust Funds*, 568 U.S. 455, 465–66 (2013) (citation omitted) (quoting *Dukes*, 564 U.S. at 351). The merits may be considered only to the extent that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied. *Id.* at 466.

### III. ANALYSIS

#### A. Evidentiary Challenges

As a preliminary matter, BANA contends that nearly all the exhibits Plaintiffs have offered to show the class should be certified cannot be considered by the Court. ECF 55 at 15-18. Specifically, BANA argues that depositions taken in other proceedings are barred by Federal Rule of Civil Procedure 32, and that an affidavit, emails, and a spreadsheet generated by Plaintiffs' counsel from data obtained from Genuine Title are barred by the Federal Rules of Evidence. *Id.*

The Court finds that Rule 32 does not bar its consideration of the depositions in the adjudication of this Motion. The Court also finds it need not rely on the other disputed evidence to certify the class, and therefore makes no determination regarding the use of those exhibits in this or any future proceeding.

BANA argues that under Federal Rule of Procedure 32(a), the court cannot consider deposition transcripts of Genuine Title representatives, Brandon Glickstein and Jay Zukerberg, taken in an enforcement action and in a separate civil dispute. ECF 55 at 15-16. Rule 32(a) states that a deposition may only be used against a party "at a trial or hearing" if "the party was present or represented" at the deposition, or "had reasonable notice of it." Fed. R. Civ. P. 32(a)(1)(A). Because BANA was not at or informed of the depositions at issue, BANA argues the transcripts should not be used against it here. ECF 55 at 15-16.

To support its argument, BANA cites one district court opinion, *Murdoch v. Rosenberg & Assocs., LLC*, that expresses doubt over whether the court could consider deposition testimony from a separate case when deciding a motion to certify a class. No. RWT 12-cv-2234, 2013 WL 1209144, at *8 (D. Md. Mar. 22, 2013). However, the *Murdoch* court explicitly failed to decide the issue, and cited no other case law to support excluding the prior deposition testimony. *See Murdoch*, 2013 WL 1209144, at *8 ("Although the Court has grave reservations regarding whether this testimony is admissible under Rule 32 . . . it need not decide this question."). In *Murdoch*, even if the disputed deposition had been considered, the plaintiffs still failed to satisfy the Rule 23(a) numerosity, commonality, typicality, and adequacy requirements, and the Rule 23(b) predominance requirement. *Id.* at *7-8.

Conversely, other federal courts "have rejected the notion that [Rule 32] governs the use of deposition testimony at a hearing or proceeding at which evidence in affidavit form is

admissible." *Palm Bay Imports, Inc. v. Miron*, 55 F. App'x 52, 56 (3d Cir. 2003) (alteration in original) (quoting *Tormo v. Yormark*, 398 F. Supp. 1159, 1168-69 (D.N.J. 1975)); *see also Diamonds Plus, Inc. v. Kolber*, 960 F.2d 765, 768 (8th Cir. 1992) (relying on a deposition that was inadmissible at trial to deny summary judgment); *Hoover v. Switlik Parachute Co.*, 663 F.2d 964, 966-67 (9th Cir. 1981) (finding depositions from separate cases "were the equivalent of affidavits" and appropriate for the court to consider at summary judgment); 8A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2142 ("Indeed, depositions can be used more freely on motions than the rule would seem to indicate. A deposition is at least as good as an affidavit and should be usable whenever an affidavit would be permissible, even though the conditions of [Rule 32(a)] are not satisfied.").[2]

Some district courts have specifically found that Rule 32 does not bar the use of depositions from prior proceedings in class certification determinations. *E.g.*, *Combs v. Cordish Cos., Inc.*, No. 14-0227-CV-W-ODS, 2015 WL 438050, at *2 (W.D. Mo. Feb. 3, 2015); *Goodman v. Platinum Condo. Dev. Corp.*, No. 2:09-CV-00957-KJD-RJJ, 2011 WL 3893915, at *1 (D. Nv. Sept. 2, 2011) (denying motion to strike deposition testimony that does not comply with Rule 32 from class certification motion). In one case, the court explained, "Put more simply, [Rule 32] governs when a deposition may be used in lieu of live testimony," and does not govern when a deposition may be used "in support of a written motion." *Combs*, 2015 WL 438050, at *2 (denying defendant's motion to strike depositions from class certification proceeding). This Court agrees.

The Glickstein and Zukerberg depositions, though conducted outside the presence of and without notice to BANA, constitute sworn testimony that is at least as reliable as the content of

---

[2] BANA has submitted its own affidavits for the Court's consideration. *E.g.*, ECF 55-1; ECF 55-2; ECF 55-3. Therefore, it does not appear that BANA objects to consideration of affidavits, generally, in the context of class certification.

affidavits. Both forms of evidence do not permit cross-examination by the opposing party, and that fact is considered by the Court in determining the weight to be accorded the evidence. Like affiants, Glickstein and Zukerberg could be called to testify to the facts they described at their depositions at a future trial. Thus, their prior deposition testimony will be considered in conjunction with this Motion.

### B. Standing

Next, BANA asserts that the lead Plaintiffs lack Article III standing, and therefore cannot represent the class. ECF 55 at 19-26. Standing is a doctrine rooted in the traditional understanding of an Article III "case or controversy." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). Standing consists of three elements: "the plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). The burden is on the plaintiff to establish these elements. *Id.*

Injury in fact is the "first and foremost" of standing's three elements. *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 103 (1998). To establish injury in fact, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 136 S. Ct. at 1548 (quoting *Lujan*, 504 U.S. at 560). Importantly, "[i]n a class action matter, we analyze standing based on the allegations of personal injury made by the named plaintiffs." *Dreher v. Experian Info. Solutions, Inc.*, 856 F.3d 337, 343 (4th Cir. 2017); *see also Baehr v. Creig Northrop Team, P.C.*, 953 F.3d 244, 252 (4th Cir. 2020) ("The strictures of Article III standing are no less important in the context of class actions.").

Since *Spokeo*, it is clear that a plaintiff may not satisfy the strictures of Article III by alleging "a bare procedural violation." 136 S. Ct. at 1549. Rather, plaintiffs must have suffered a

7

concrete harm as a result of the "defendant's statutory violation that is the type of harm Congress sought to prevent when it enacted the statute." The Fourth Circuit has explained, that under RESPA, "the deprivation of impartial and fair competition between settlement services providers" is not the kind of harm Congress sought to prevent and, thus, will not confer Article III standing. *Baehr*, 953 F.3d at 254. Rather, "the harm it sought to prevent is the increased costs . . . for settlement services." *Id.* (holding that deprivation of fair competition "untethered from any evidence that the deprivation increased settlement costs — is not a concrete injury under RESPA"); *see also Edmondson v. Eagle Bank*, Civil Case No. SAG-16-3938, 2020 WL 3128955, at *3 (D. Md. June 12, 2020).

BANA correctly argues that that Plaintiffs cannot establish standing by alleging a deprivation of "impartial and fair competition" alone. ECF 55 at 20. However, Dobbins and Parker have also presented an additional injury, specifically, that they "paid higher settlement charges" as a result of the kickback scheme between Genuine Title and BANA. ECF 9 ¶ 64.

BANA vigorously disputes that Plaintiffs did, in fact, pay more for settlement services, and contends that their "[b]are overcharge allegations" cannot confer standing. ECF 55 at 22-25. To support its claim, BANA presents a recent statement from Zukerberg, the President of Genuine Title during the relevant period, suggesting that Genuine Title's fees "were based on prevailing market rates in the geographic location and did not depend on whether the mortgage loan officer referring the business to Genuine Title received any compensation in return for the referral." ECF 55-3 ¶¶ 8-11. BANA claims that this "establishes conclusively" that the alleged kickbacks did not lead to higher charges. ECF 55 at 24.

Plaintiffs, on the other hand, contend that previous statements by Zukerberg show that even if its fees were not "gross" overcharges, Genuine Title would have charged lower rates absent the

kickback arrangement. ECF 62 at 6-7. Although Zukerberg stated at deposition that he believed Genuine Title's rates were "competitive" with other title companies, ECF 55-4 at 70:7-8, he also admitted that he, "like any other business tried to get top dollar for your fee," *id.* at 68:1-5. He testified that he would have preferred "to give the borrower back a couple extra hundred dollars instead of paying it to them [those who Genuine Title had kickback agreements with]." *Id.* at 70:3-8.

In arguing that Genuine Title would have charged them a lower fee, had it not had to account for its kickback payments, Plaintiffs have alleged more than a bare statutory violation and, moreover, have presented some evidence to corroborate the claim that they were harmed by paying higher fees than they would have absent the alleged RESPA violation.[3] *See Donaldson v. Primary Residential Mortgage, Inc.*, No. ELH-19-1175, 2020 WL 3184089, at *19 (D. Md. June 12, 2020) (holding that plaintiffs' claim they paid higher prices because of a kickback arrangement giving rise to a RESPA violation alleged a concrete injury). In a similar case, this Court held that standing in a RESPA suit is sufficiently established at the class certification stage, even where the parties present contradicting evidence about whether the alleged harm to plaintiffs actually occurred. *See Edmondson*, 2020 WL 3128955 at *3 (finding allegations supported by other indicia that plaintiff paid more than other borrowers was enough to establish standing, despite defendants' expert

---

[3] BANA contends that Plaintiffs must not only show an overcharge, but also that the overcharge lacked a "reasonable relationship to the market value." ECF 55 at 23. BANA's reliance on *Walls v. Sierra Pacific Mortgage Co.*, GLR-19-00595, 2020 WL 1528626 (D. Md. Mar. 31, 2020), however, is misplaced. In *Walls*, plaintiffs' RESPA claims were dismissed because they did not allege that the payments charged were unreasonable. However, in that case, the court was applying the 12 U.S.C. § 2607(c) safe harbor provision, which provides that "a payment of a fee . . . for services actually performed" is not a RESPA violation, so long as such fees "bear[] a reasonable relationship to the market value of the services performed." *Walls*, 2020 WL 1528626 at *6 (quoting *PHH Corp. v. CFPB*, 839 F.3d 1, 41 n.22 (D.C. Cir. 2016)). That statutory provision is not at issue in this dispute, and has no bearing on Plaintiffs' standing.

9

testimony that plaintiff paid fees "well below the market rate"). Upon the similar circumstances in this case, the Court reaches the same result.

The Court expresses no view at this time as to whether Plaintiffs or any of the putative class members were overcharged for services rendered by Genuine Title.[4] The Court merely concludes that at this stage of the proceedings, Plaintiffs have proffered enough evidence to meet the requirements of Article III standing. As more factual development occurs, it may become clear that Plaintiffs were not overcharged for title and settlement services. Accordingly, BANA may continue to challenge Plaintiffs' Article III standing as this litigation proceeds, particularly at the summary judgment stage. *See Overbey v. Mayor of Baltimore*, 930 F.3d 215, 227 (4th Cir. 2019) (explaining that the elements of standing must be supported "with the manner and degree of evidence required at the successive stages of the litigation").

**C. Class Certification**

Plaintiffs have moved to certify a class under Rule 23(b)(3), in which "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). As a result, Rule 23(b)(3) class actions "must meet predominance and superiority requirements not imposed on other kinds of class actions." *Gunnells*, 348 F.3d at 424. Importantly, "[i]n a class action brought under Rule 23(b)(3), the 'commonality' requirement of Rule 23(a)(2) is 'subsumed under, or superseded by, the more stringent Rule 23(b)(3) requirement that questions common to the class predominate over other

---

[4] Plaintiffs claim in their Reply that they paid $685 for title examination and abstract and present data from The Department of Housing and Urban Development ("HUD"), and contend that this was well above the average rate for title services. ECF 62-6. Indeed, based on the HUD data, if Plaintiffs paid $685 as they claim, they were charged over twice the average rate of borrowers in Maryland in 2010 ($322), and thirty-seven percent more than borrowers who paid fees in the eightieth percentile ($497). *Id.* However, because evidence substantiating a $685 fee is not properly before the Court, it will not be considered at this time.

questions.'" *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146 n.4 (4th Cir. 2001) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 609 (1997)). Thus, the Court will analyze predominance and commonality together. *See, e.g.*, *Romeo v. Antero Resources Corp.*, No. 1:17CV88, 2020 WL 1430468, at *8 (N.D. W. Va. Mar. 23, 2020) ("[T]he Court will consider commonality in its discussion of predominance.").

1. **Rule 23(b)(3)**

   Predominance of Common Questions

   This litigation turns on predominant common issues of law and fact. BANA argues that whether a particular borrower's services were the result of a RESPA violation (provided in exchange for a kickback), ECF 55 at 38-42, and whether the statute of limitations should be equitably tolled, *Id.* at 42, will require individual inquiries into each putative class member's transaction and circumstances.[5] This Court disagrees. These issues will not require individual assessments that "overwhelm questions common to the class." *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013).

   First, Plaintiffs have shown that burdensome individualized scrutiny of each proposed class member's transaction will not be necessary to establish every RESPA violation. Plaintiffs have provided direct and circumstantial evidence that BANA was involved in a specific kickback scheme with Genuine Title that affected every class member's transaction.

   Plaintiffs allege BANA referred borrowers to Genuine Title based on an agreement that Genuine Title would provide data or marketing to BANA for each loan referred. ECF 9 ¶¶ 2, 17-

---

[5] BANA also argues that whether each plaintiff has standing presents an individual inquiry. ECF 55 at 36-38. As explained above, Plaintiffs have claimed overcharging, which sufficiently alleges a concrete injury at this stage of the case to establish Article III standing. Individual inquiries into whether each fee was "reasonable" relative to the market are not necessary for standing and do not destroy predominance.

11

18. Plaintiffs have provided statements from a former Genuine Title marketing and account representative, Brandon Glickstein, that show such an agreement between Genuine Title and a specific BANA loan officer, Michael Bendebba. ECF 55-6 at 97:12-100:3 (describing agreement to provide customer leads in exchange for referrals).

BANA counters that Plaintiffs have no proof that any loan officers besides Bendebba were involved. However, Glickstein's failure to identify additional officers at his deposition does not conclusively establish that other BANA loan officers were not involved in a kickback arrangement, particularly where plaintiffs have presented circumstantial evidence that a more pervasive scheme existed. Glickstein testified that ninety percent of the loans Genuine Title closed during the relevant period were supported by a kickback arrangement. ECF 55-6 at 43:4-46:8. In the words of Jay Zukerberg, former president of Genuine Title, in order to compete in the marketplace, he felt Genuine Title had "to pay to play" by offering money, data, or free marketing to lenders in exchange for referrals. ECF 50-2 at 27:1-12, 90:20-91:11, 184:7-12. This testimony provides circumstantial evidence that a pervasive scheme existed between Genuine Title and the vast majority of lenders with whom it conducted business, including BANA. *See* ECF 55-1 ¶ 17 (admitting that 572 loans generated during the putative class period "appear to have been closed using Genuine Title"). Plaintiffs have explained that they will be able to establish a RESPA violation affected each class member "in one stroke," by proof of a common agreement. *See Bond v. Marriott Int'l, Inc.*, 296 F.R.D. 403, 407 (D. Md. 2014).

This evidence goes beyond mere conjecture based on a "supposed industry-wide practice." *See Galiano v. Fid. Nat. Title Ins. Co.*, 684 F.3d 390 (2d Cir. 2012) (explaining that plaintiffs could not rely on high costs alone to establish a RESPA violation, without plausible allegations that prices were affected by unlawful agreements). It ties a specific title company, with a documented

pervasive practice of entering into kickback arrangements with lenders, to BANA and to at least one specific BANA employee. The Court agrees that the evidence at this stage is not as robust as in *Edmondson*, 2020 WL 3128955, and *James v. Acre Mortgage & Financial, Inc.*, No. SAG-17-1734, 2020 WL 2848122 (D. Md. June 2, 2020), where Plaintiffs had direct evidence that higher-up managers at the financial institutions were personally involved in kickback schemes with Genuine Title. However, the question presented is not whether Plaintiffs will succeed on the merits. To be sure, BANA may ultimately demonstrate that no kickback arrangement existed with BANA, or that it was not as pervasive as Plaintiffs contend because it was limited to Bendebba alone. Regardless, the existence of the alleged agreement is a question answerable for the entire class, and is "at the heart of the litigation." *See EQT*, 764 F.3d at 366.

Second, whether the statute of limitations should be tolled due to fraudulent concealment also presents common questions, and can be established without individual issues predominating. The Fourth Circuit has articulated the proper standard that courts should employ when deciding whether to equitably toll a statute of limitations based on fraudulent concealment. *Edmondson*, 922 F.3d at 548. "A plaintiff must demonstrate: (1) the party pleading the statute of limitations fraudulently concealed facts that are the basis of the plaintiff's claim, and (2) the plaintiff failed to discover those facts within the statutory period, despite (3) the exercise of due diligence." *Id.* (quoting *Supermarket of Marlinton, Inc. v. Meadow Gold Dairies, Inc.*, 71 F.3d 119, 122 (4th Cir. 1995)).

BANA disputes Plaintiffs' contention that the alleged lack of transparency on Plaintiffs' HUD-1 forms, and the representations on the Notice to Applicant Regarding Title Insurance and Closing Agent ("NTART") forms, amount to affirmative concealment. ECF 55 at 43. However,

whether such actions constitute concealment is another common question that can be answered on a class-wide basis.

BANA further argues that whether borrowers exercised due diligence would require individual inquiries. As explained in *Edmondson*, which concerned a similar alleged kickback arrangement with Genuine Title, this Court can assess, collectively, whether the information and media reporting related to prior litigation and enforcement proceedings would have prompted a reasonable person to uncover the facts substantiating Plaintiffs' RESPA claims. *See Edmondson*, 922 F.3d at 555 (explaining that "the fraudulent concealment doctrine requires *reasonable* diligence"). Like in *Edmondson*, the potential amount of exposure to previous enforcement actions and litigation against Genuine Title that any class member could have been exposed to is relatively modest. *See Edmondson*, 2020 WL 3128955 at *6 (concluding that whether any class member would have notice of the Genuine Title kickback arrangement could be assessed on a class-wide basis). This case is distinguishable from *Thorn v. Jefferson-Pilot Ins. Co.*, in which the Fourth Circuit found it impossible to determine on a class-wide basis whether plaintiffs acted with due diligence, because the class involved 1.4 million consumers "spread out geographically over four states and temporally over 62 years" with potentially great variation in media exposure, 445 F.3d 311 (4th Cir. 2006). Here, the potential scope of consumers is far more limited in time and geography, and individual hearings will not be necessary to determine whether class members encountered information that would have prompted them to uncover the facts substantiating their

RESPA claims.[6]  Thus, the predominance requirement of Rule 23(b) (and the related commonality requirement of Rule 23(a)) is satisfied.

Superiority

In addition to finding that common questions predominate, the Court finds that the class action vehicle is "superior to other methods" of adjudicating this controversy.  *See* Fed. R. Civ. P. 23(b)(3).  Based upon the common questions that predominate, as explained above, a class action is more efficient than allowing potentially hundreds of individual claims arising from this purported kickback arrangement.

**2. Rule 23(a)**

Numerosity

Defendants do not challenge Rule 23(a)'s numerosity requirement.  The parties dispute the exact number of loans that fall within the proposed class definition.  Regardless, the minimum number the parties agree on at this stage is over 500 loans.  See ECF 55-1 ¶ 17 (stating that of the loans identified by Plaintiffs, "[a]ccording to BANA's records," 572 loans appear to have been closed with Genuine Title).  The Court finds that there are sufficiently numerous proposed class members.

Typicality

The typicality requirement in Rule 23 requires that "claims or defenses of representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  This prerequisite "goes to the heart of a representative parties' [sic] ability to represent a class." *Deiter v. Microsoft*

---

[6] Certainly, the Court reserves the right to decertify the class action if later factual development reveals that individual questions predominate over common questions. *See Minter v. Wells Fargo Bank, N.A.*, 2013 WL 1795564, at *3 (D. Md. Apr. 26, 2013) ("When the Court certified the Tolling Class it noted it was possible that proving equitable tolling might become unmanageable and thus warrant the Court's exercise of discretion to decertify the class.").

*Corp.*, 436 F.3d 461, 466 (4th Cir. 2006). For that reason, the "plaintiff's claim cannot be so different from the claims of absent class members that their claims will not be advanced by plaintiff's proof of his own individual claim." *Id.* The representative plaintiff's claims "need not be 'perfectly identical or perfectly aligned'" with other class members' claims, but "the representative's pursuit of his own interests 'must simultaneously tend to advance the interests of the absent class members.'" *Ealy v. Pinkerton Gov't Servs. Inc.*, 514 F. App'x 299, 305 (4th Cir. 2013) (unpublished) (quoting *Deiter*, 463 F.3d at 466). This analysis "tend[s] to merge" with the commonality and adequacy questions. *See Broussard*, 155 F.3d at 337 (quoting *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 n. 13 (1982)).

As discussed above, Plaintiffs allege BANA has harmed all putative class members by violating the same statutory provision based on a common scheme between BANA and Genuine Title. Although class members may have worked with different loan officers in different areas, proof that the named Plaintiffs' loan officer received a kickback from Genuine Title based on a referral would tend to advance the argument that other loan officers were similarly involved. Other minor differences, such as the type of kickback received by each loan officer, similarly do not make Plaintiffs' claims materially different from those of other class members. *See Broussard*, 155 F.3d at 338 (explaining that class certification primarily requires the class representative to have the "same interest" and "same injury" as other class members). BANA has not alleged, and this Court does not find, any conflict of interest that would impair Plaintiffs from advancing the claims of the entire class.

<u>Adequate Representation</u>

Finally, Plaintiffs must illustrate that they will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Citing no authority other than Rule 23 itself, BANA argues

that Plaintiffs are not adequate representatives because they "lack knowledge sufficient to prove their own claim." ECF 55 at 18. BANA points out that Dobbins and Parker relied on Counsel to understand much of their claims. ECF 55 at 18-19. However, the Fourth Circuit has recognized that a plaintiff "need not have extensive knowledge of the facts of the case in order to be an adequate representative," particularly in a "complex case." *Gunnells*, 348 F.3d at 430. That Plaintiffs have relied on counsel to understand the intricacies of the RESPA statute and their potential relief does not convince this Court that they will fail to vigorously represent the class. The Court also notes that Dobbins attended the telephonic hearing on this motion to certify the class, demonstrating active involvement in the case.

The Court also concludes that Plaintiffs' counsel, which is largely the same counsel for the class certified in *Edmonson*, 2020 WL 3128955, *James*, 2020 WL 2848122, and *Fangman v. Genuine Title, LLC*, No. RDB-14-0081, 2016 WL 6600509, at *1 (D. Md. Nov. 8, 2016), will adequately represent the class.

## IV.   CONCLUSION

For the reasons set forth above, Plaintiffs' Motion to Certify Class, ECF 50, is GRANTED. A separate Order follows.

Dated:  August 28, 2020

/s/<br>
Stephanie A. Gallagher<br>
United States District Judge